UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CEDRIC GATES, | ) | Case No. 1:03 CV 0953 |
| | ) | |
| Petitioner, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| RICH GANSHEIMER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Cedric Gates, a state prisoner, has applied for habeas corpus relief under 28 U.S.C. §2254. On March 31, 2000, Gates was convicted in Cuyahoga County Court of Common Pleas of robbery ("smash and grab") with notice of prior violation and repeat offender specification (Count 1), and preparation of drugs (marijuana) for sale (Count 2). Gates was acquitted of possession of a criminal tool (a rock) (Count 3). The trial court imposed the maximum sentence of eight years for robbery plus a consecutive term of three years as a **repeat violent offender (RVO)** in accordance with Ohio Rev. Code §2929.14(D)(2)(b). Also, the trial court had initially mistakenly found that the preparation of drugs conviction was a fourth degree felony and imposed a twelve-month concurrent sentence.

*Procedural History:*

On direct appeal, the state appellate court affirmed the robbery conviction and sentence, but remanded for resentencing on the preparation of drugs conviction stating that this was a fifth degree, not fourth degree felony. See *State v. Gates*, 2001 WL 534163 *13 (Ohio App. 8 Dist.) May 17,

1:03 CV 0953                                  2

2001, appeal not allowed, 93 Ohio St. 3d 1459, 756 N.E.2d 1235 (Table Oct. 29, 2001),

reconsideration denied, 93 Ohio St.3d 1499, 758 N.E.2d 1149 (Table Dec. 5, 2001), *cert. denied*,

*sub nom, Gates v. Ohio*, 535 U.S. 1082, 122 S.Ct. 1971, 152 L.Ed.2d 1030 (2002).


     While the initial direct appeal was proceeding through the state and federal courts, on

September 24, 2001, Gates filed an application to reopen appeal due to ineffective assistance of

appellate counsel (Respondent's Exhibit 25). This appeal involved issues which are not related to

Gates' federal application.  In any event, the application to reopen was denied and Gates was

unsuccessful on appeal. See *State v. Gates*, 2002 WL 1813843 (Ohio App. 8 Dist. Aug. 5, 2002),

appeal not allowed, 97 Ohio St.3d 1460, 778 N.E.2d 1051 (Table 2002).


     On December 2, 2002, pursuant to the appellate court's mandate, Gates was resentenced on

the preparation of drugs conviction and received a reduction of his sentence to six months rather than

the original 12 month sentence (Respondent's Exhibit 34).  Gates timely appealed from resentencing

arguing: that the trial court erred when it treated the resentencing as supplemental to the original

sentencing and not *de novo*; that the trial court erred in not vacating the three-year enhancement under

the repeat violent offender specification; and finally that the trial court erred in putting post-release

control in its judicial entry when no mention was made at the time of sentencing.  These assignments

of error were overruled and the judgment affirmed. See *State v. Gates*, 2004 WL 584044 (Ohio

1:03 CV 0953                                    3

App. 8 Dist. March 25, 2004), appeal not allowed, 103 Ohio St.3d. 1428, 814 N.E.2d 491 (Table 2004).

Counsel for Gates had meanwhile wisely filed his petition for habeas corpus on May 20, 2003, presumably to avoid a potential situation of untimeliness under 28 U.S.C. §2244(d), raising the following three grounds: (1) the trial court denied Mr. Gates federal due process when it sentenced him contrary to the dictates of Ohio law; (2) the evidence supporting the conviction for robbery was insufficient and thus a conviction for robbery is in violation of federal due process; (3) Mr. Gates was denied federal due process when the jury was not instructed that in decision it had to be unanimous as to at least one of two distinct manners in which the crime of robbery in count one could be committed.

**Exhaustion:**

Respondent acknowledged at the time he filed his return of writ that a state appeal was pending, but ignored the question of exhaustion of state remedies despite the fact that the question of the three-year conviction RVO sentence enhancement was again under challenge in the subsequent appeal during 2003-2004. The undersigned finds now that Gates has exhausted his state remedies. His state appeals concluded on September 1, 2004. See *State v. Gates*, 103 Ohio St.3d 1428, 814

1:03 CV 0953                                        4

N.E.2d 491 (Table 2004), and the time to seek *certiorari* to the U.S. Supreme Court has now

passed.[1]


      The undersigned finds that for purposes of 28 U.S.C. §2254(b)(1)(A), Gates' federal petition

raised grounds which were exhausted at the time of filing.  However, the issue of 3-year RVO

sentence enhancement was subsequently again in issue before the state appellate courts which

unquestionably had the power to reverse or modify, whereas the district court has very restricted

Congressionally granted powers under the limited standard of review granted under 28

U.S.C.§2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d

389 (2000). The state courts now have had the opportunity to fully explore and discuss Gates'

arguments.


### *Federal Standard of Review:*

      For purposes of federal collateral review, all claims adjudicated on their merits by state courts

are governed by 28 U.S.C. §2254(d)(1) and (2).  *See Bell v. Cone*, 535 U.S.685, 122 S.Ct. 1843,

1852, 152 L.Ed.2d 914 (2002).  This applicable limited standard of review is:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim  - - -

---

[1]  The grounds raised for habeas review were exhausted at the time the federal petition was filed since they had been "fairly presented" to the Ohio Supreme Court on the first set of appeals.  However, the second appeal had the potential of meeting the first ground concerning sentencing on the robbery conviction.

1:03 CV 0953                                    5

> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same. *Lockyer*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than "[the Supreme] Court  has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Harris v. Carter*, 337 F.3d  758, 761 (6th Cir. 2003); *Joshua v. DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ. *Id.*  The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court's decision as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

1:03 CV 0953                                    6

the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003), *cert. denied*, - U.S. -, 124 S.Ct. 1178, 157 L.Ed.2d 1211 (2004).  This includes the state court's refusal to extend or unreasonable extension of existing legal principles from Supreme Court precedent to new contexts. See *Williams*, 529 U.S. at 407.  The state courts application must be "objectively unreasonable." *Harris*, 337 F.3d at 361 quoting *Williams* at 411.  "A state court's application of federal law is unreasonable and habeas relief may be granted if 'the state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" *Joshua*, 341 F.3d 436-37; *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998), quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996).  This is not to say that under the "unreasonable application" standard, independent review of the record is forbidden on habeas review, but where the state court has articulated its reasoning the federal court is prohibited from substituting its own independent judgment on what the state court should have considered in reaching its conclusion.  *Joshua*, 341 F.3d at 442.


***Ground One - Sentence Enhancement:***

          Under his first ground Gates contends that the three year RVO sentence enhancement was a denial of federal due process.  Respondent counters in return of writ that this argument was predicated entirely on state law when presented to the state courts and thus failed to raise a federal claim.  The state appellate court, though, stated in its 2004 decision that Gates' argument raising the unconstitutionality of RVO sentence enhancement was identical to the argument raised in 2001.  See

1:03 CV 0953                                     7

2004 WL 584044 ¶12.  Accordingly,  the state appellate court  refuted respondent's argument that

no constitutional claim had been raised to the state courts in 2001.


      At sentencing the trial court had  imposed an 11-year sentence which included a three-year

RVO sentence enhancement.  In his federal petition, as in his initial state appeal, Gates argued that the

state in order to impose an additional RVO sentence had to follow the dictates of Ohio Rev. Code

§2929.14(D)(2)(b) and Ohio Rev. Code §2929.14(C) for imposition of the maximum sentence.

Gates contended that there had been a violation of due process in the failure to properly follow the

state sentencing guideline scheme.


      The trial court's remarks at sentencing were:

> [B]efore imposing the additional term, I would have to find both the following:
> That the maximum term is insufficient to punish the defendant and protect the
> public because the risk of recidivism outweighs any mitigating factor; and two,
> the maximum term is demeaning to the seriousness of the offense." * * * I
> have a person who is convicted of this same crime of smashing a window in
> a vehicle that was stopped in the same area of the city with the purpose of
> robbing, and in that case somebody did die.  There was an attempt to cause
> the serious physical harm.  When you break a window of a motor vehicle,
> anything can happen.  They can drive off the road and die.  Anything is a
> potential.  There is an attempt.  It could cause serious harm. * * * This
> defendant did spend a lot of time in prison, comes right back and commits the
> very same crime.  The Court finds that recidivism is highly likely, and the
> court needs to protect society from these types of crimes.  Further, as the
> presentence investigation report states, these are not just his only convictions.
> * * * [S]o the Court does find this the worst form of the offense since it is a
> robbery with the same intent he exhibited in the past. (TR. 439).

1:03 CV 0953                                8

*Gates*, 2001 WL 534163 *8.

The trial court's remarks were premised on Gates' criminal history of a prior smash and grab incident where the driver attempted to pursue Gates and suffered a heart attack. Then after the incident in question, Gates was observed by an undercover officer again perpetrating another smash and grab robbery at the same Cleveland intersection. The state appellate court found that although the trial court's pronouncement at the time of sentencing was not a model of clarity, it nonetheless indicated consideration of the aggravating factors set forth under the statutory sentencing guidelines.

Pursuant to Ohio's state statutory sentencing guidelines, RVO enhancement is available only when the grand jury included an RVO specification and the court imposed the longest prison term from the authorized range. Both these preconditions had been met. See Ohio Rev. Code §2929.14(D)(2)(b). Next, the following two conditions must be conjunctively met:

> (i) The terms so imposed [longest authorized prison term] are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

> (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

§2929.14(D)(2)(b)(i) and (ii).

1:03 CV 0953                                   9

As Gates points out, both these subsections refer to Ohio Rev. Code §2929.12, "Seriousness and recidivism factors." This particular section of the Revised Code lists mitigating and aggravating factors. Factors set forth in divisions B and C of §2929.12 relate to seriousness of the conduct and the factors in divisions D and E relate to recidivism. The undersigned agrees with Gates' position that the trial court did not include consideration of the listed factors in imposing RVO sentence enhancement. For example, aggravating factors for seriousness of the crime included "physical or mental injuries suffered by the victim of the offense . . . exacerbated because the physical or mental condition" or "the victim of the offense suffered serious physical, psychological or economic harm as a result of the offense." See Ohio Rev. Code §2929.12(B)(1) and (2). Likewise, the aggravating factors for recidivism included previous adjudication of delinquency, lack of rehabilitation to a satisfactory degree after previously being adjudicated a delinquent, pattern of drug or alcohol abuse, lack of remorse, or at the time of committing the offense the offender was under release from confinement (See Ohio Rev. Code §2929.12(D)(1)-(5)).

Gates maintains that the trial court could not possibly have engaged in the specific type of weighing required for imposition of the RVO sentence because those factors did not exist. He points out that the victim only suffered a minor injury to her hand and there was no evidence that she was psychologically traumatized. (The victim had suffered some small marks on her face from the shattered glass and a deep cut on her finger from the strap as a result of the struggle for her briefcase.) *Gates*,

1:03 CV 0953                                        10

2001 WL 531463 *1.  None of these factors for seriousness of the offense or recidivism was addressed at sentencing.

However, Gates overlooks the fact that the aggravating  factors are flexible and contain language that includes "any other relevant factors as indicating that the offender's conduct is more serious than conduct normally constituting the offense" . . . "or any other relevant factors indicating that the offender is likely to commit future crime." See §2929.12(B) and (D).  Consequently, the state trial court was not limited in consideration of merely the enumerated factors of §2929.12 but could also consider other "relevant factors" in determining whether the terms imposed are inadequate to punish the offender and protect the public from future crime, and that the terms imposed are demeaning to the seriousness of the offense.  See §2929.14(D)(2)(b)(i) and (ii).  Given the flexibility written into the state sentencing guidelines, Gates has not demonstrated error in their application as a matter of state law.

Turning to federal legal considerations, the Supreme Court has stated there are due process rights in sentencing.  E.g. *Harris v. U.S.*, 536 U.S. 545, 566-67, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (sentence enhancement); *Nichols v. U.S.*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (prior conviction); *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)  (constitutional limits on a state's power to identify acts as sentencing factors not subject to reasonable doubt standard); *Witte v. U.S.*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d

1:03 CV 0953                                        11

351 (1995) (consideration of uncharged cocaine importation in enhancing sentence for marijuana charges).  More recent Supreme Court decisions, though, concerned a combination of due process and the Sixth Amendment right to trial by jury.  E.g. *Jones v. U.S.*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (provisions of carjacking statute that established higher penalties when the offense resulted in serious bodily injury or death); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (other than the fact of prior conviction, any fact that increases penalty for crime beyond prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt); *Blakely v. Washington*, 542 U.S. - , 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (same); *U.S. v. Booker*, - U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (same).  Gates, however, raised no Sixth Amendment claim in his initial state appeal nor in his argument appended to his federal habeas petition.  Unlike those decisions grounded upon the Sixth Amendment, Gates is not challenging the lack of jury consideration of RVO sentence enhancement.  He merely contends that the trial judge did not follow the state sentencing guidelines.  Gates has not shown that the considerations used by the trial court in enhancing his sentence were contrary to or an unreasonable application of federal law.

Consequently, Gates has not demonstrated legal error in the application of Ohio's sentencing guidelines,  much less that sentence enhancement was contrary to or an unreasonable application of clearly established federal law  as limited solely to due process in the application of the state sentencing guidelines.

1:03 CV 0953                                    12

***Ground Two - Sufficiency of Evidence Supporting Robbery Conviction:***.

Gates argues that there was insufficient evidence as a matter of law to prove that the rock used in the commission of this robbery constituted a deadly weapon.  Gates was indicted for robbery in violation of Ohio Rev. Code §2911.02, which provided:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.

Ohio Rev. Code, §2911.02 (Anderson 2002).

In the indictment (Respondent's Exhibit 2), Gates was charged under the first two subdivisions of this statute -- use of a deadly weapon or attempting to inflict or threatening to inflict physical harm on the victim.  The state appellate court found that the evidence supported both theories but noted the assignment of error related only to the trial court's failure to dismiss the charge regarding the use of a deadly weapon.  *Gates*, 2001 WL 534163 *6.

The state appellate court found that a rock could constitute a deadly weapon as broadly defined under Ohio Rev. Code §2923.11 ("any instrument, device or thing capable of inflicting death . . . or possessed, carried, or used as a weapon"), and applied precedent from *State v. Wharf*, 86

1:03 CV 0953                                                13

Ohio St.3d 375, 715 N.E.2d 172 (1999), that no specific mental state is necessary regarding the "deadly weapon" element of robbery.

Gates argues that the evidence only supported a finding that the rock was used as a device simply to break the car window and not used as a deadly weapon. The definition of "deadly weapon" is borrowed from Ohio Rev. Code §2923.11. See *Ohio Rev. Code* §2911.02(C)(1). Gates, however, points to the 1973 committee comment following §2923.11 providing that the definition was intended to cover things carried, possessed, or used as weapons "such as a rock or cane when used for offensive or defensive purposes."  See Ohio Rev. Code §2923.11, Committee Comment (Anderson 2002).  However, it was precisely this verbiage that was relied upon by the state appellate court in finding that the rock was used offensively to commit the "smash and grab" robbery.  See 2001 WL 534163*6.

The Constitution prohibits a conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970).  In habeas corpus proceedings the "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  This "standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319.

1:03 CV 0953                                             14

Thus, "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original). Thus, the test in habeas corpus is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225, 237 (1992).

Viewed in the light most favorable to the prosecution, there was sufficient evidence on which to convict Gates for robbery under the theory of use of a deadly weapon. Gates has failed to show that the state court decision finding the evidence sufficient was contrary to or involved an unreasonable application of clearly established federal law or was a result of a decision based on an unreasonable determination of the facts in light of the evidence in the state court proceeding.

**Ground Three - Duplicity:**

Gates argues there is duplicity in the robbery conviction under two different theories of guilt: commission of a theft offense with a deadly weapon (i.e., the rock); or commission of a theft offense in which the victim was physically harmed (i.e., the minor injuries on her face as well as the cut on her finger). The jury was instructed that they could convict Gates if they found he committed robbery

1:03 CV 0953                                    15

under either of these theories ("and/or"), but was not instructed on the need to be unanimous as to either theory before convicting him.  In *Richardson v. U.S.*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed. 2d 985 (1999), "the Supreme Court distinguished between the elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity." *U.S. v Davis*, 306 F.3d 398, 413 (6th Cir. 2002), *cert. denied*, 537 U.S. 1208 (2003). The concept entails differentiating which prohibited acts listed in a criminal statute as alternative methods of committing an offense  are "elements" of the crime, and which acts are mere "means" to commit the crime (which allows the jury to convict without unanimity among a series of alternative actions taken by a defendant).   Due process and the Sixth Amendment right to a unanimous jury verdict are implicated when there is a risk of a "patchwork verdict," where all jurors fail to agree on what acts the defendant engaged in while committing the offense. See *Duncan v. U.S.*, 850 F.2d 1104, 1110 (6th Cir. 1988), *cert. denied,* 493 U.S. 1025 (1990), *overruled* on other grounds by *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *U.S. v. Dolan*, 99 F.3d 1140, unpublished (Table 6th Cir. 1996).


Respondent argues that this third ground  was waived by reason of procedural default in the state courts and consequently should be dismissed.  Again, the state appellate court differs.  The state appellate court determined that this  argument had been presented on initial direct appeal but opted not to address it.  See *Gates*, 2002 WL 1813843 ¶31-¶32.  Consequently, the federal district court confronts a situation where the state appellate court admits that Gates had raised this argument but has

1:03 CV 0953                                        16

opted not to address it. Because this state court decided not to address Gates' argument, the district

court must review this argument *de novo* and is not restricted by §2254(d). See *Clinkscale v.

Carter*, 375 F.3d 430, 435-36 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 1316 (2005); *Maples v.

Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Exhaustion of state remedies does not require a state

court adjudication on the merits of the claim at issue. *Smith v. Digmon*, 434 U.S. 332, 333, 98 S.Ct.

597, 54 L.Ed.2d 582 (1978); *Clinkscale*, 375 F.3d at 438.[2]


Duplicity is charging two or more distinct crimes or offenses in a single count. See *U.S. v.

Sturdivant*, 244 F.3d 71, 75 (2nd Cir. 2001); *U.S. v. Buchmeier*, 255 F.3d 415, 421 (7th Cir.

2001), *cert. denied*, 534 U.S. 1014 (2001); *U.S. v. Davis*, 306 F.3d at 415. "[W]hether... one

offense or separate offenses are charged... is a difficult and subtle question." *Davis*, 306 F.3d at 415,

quoting 2 Wright, *Federal Practice & Procedure* §142 at 17 (3rd Ed. 1999). Whether a statute

creates several offenses or merely describes various ways in which a single offense may be committed

is a legal question. *Id.*, §142 at. 9; *Davis*, 306 F.3d at 413. "The overall vice of duplicity is that the

jury cannot in a general verdict render its finding on each offense, making it difficult to determine

---

[2] There is unnecessary concern over the fact that Gates failed to object to the trial court's disjunctive robbery instruction. Since the state courts had not addressed the argument then obviously, they failed to "clearly and expressly rely" on Gates' procedural default. See *Coleman v. Thompson*. 501 U.S. 722, 111 S.Ct. 2546. 114 L.Ed.2d 640 (1991). This is a part of the cost and risk the state incurs when its courts choose to ignore claims.

"Ordinarily, it is not necessary to give specific unanimity instructions unless 1) a count is extremely complex, 2) there is variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *U.S. v. Sanderson*, 966 F.2d 184, 187 (6th Cir.1992); *U.S. v. Duncan*, 850 F.2d at 1114.

1:03 CV 0953                                      17

whether a conviction rests on any one of the offenses or on both." *U.S. v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997); *U.S. v. Davis*, 306 F.3d at 415.[3]

Gates' references to *Richardson v. U.S.* do not sustain his argument.  The Supreme Court in that case pointed out that the continuing criminal enterprise statute (18 U.S.C. §848) covers many different kinds of behavior of varying degrees of seriousness which may be alleged as "violations" for purposes of meeting the criminal statute's requirements.  The breadth of the unlawful conduct covered increased the likelihood of conviction despite disagreement among jurors about just what the defendant did or did not do.  *Richardson*, 526 U.S. at 819.   There was concern that, "unless required to focus upon specific factual detail the jury will fail to do so,   simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire."  *Id.*   In contrast the crime of robbery as defined under Ohio Rev. Code §2911.02 provides a very limited set of circumstances of commission of a theft offense plus deadly weapon; physical harm; or threat or use of force.

––––––––––––––––––––

[3] The undersigned has doubts about the conceptual viability  of duplicity as used in this case because thrust of the concept is jury unanimity and avoidance of a patchwork verdict.  This is difficult to reconcile with the principle that the Sixth Amendment does not in all cases require state court verdicts to be unanimous.  See *Brown v. Louisiana*, 447 U.S. 323, 331, 100 S.Ct. 2214, 2221, 65 L.Ed.2d 159 (1980); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (noting history in footnote 45); and see *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979) (conviction by nonunanimous six-person jury for nonpetty offense violated right to trial by jury).

Perhaps "unanimity" is not the foundation of duplicity, and it would be preferable to state that the Sixth Amendment also encompasses the right to a transparent verdict through which the criminal acts for which defendant stands convicted are plainly discernable.  Duplicity as presently invoked provides only a half-measure to secure a transparent verdict.

1:03 CV 0953                                      18

Nonetheless, Gates' point is valid.  The subparts of the crime of robbery were different offenses, and not various means to commit the crime.  However, the undersigned believes that had the state courts addressed the issue, no unanimity instruction would have been required because the issues were not complex, there was no variance from the indictment, and there is no risk of jury confusion in a robbery case premised on a smash and grab incident.  See *U.S. v. Sanderson*, 966 F.2d at 187. Furthermore, Gates does not prevail on closer examination of the legal mechanism of the offense.  The plurality in *Schad* found it impossible to propose any single test for determining when two acts are so disparate as to exemplify two inherently separate offenses or when the acts are "not independent elements of a crime but are a mere means of satisfying a single *mens rea* element."  *Schad*, 501 U.S. at 637.  However, analysis begins first with whether the legislature intended to create different offenses or different means for violating a single offense, and secondly, whether the statutory definition is constitutional under the due process clause. *Id*., 501 U.S. at 632-33, 636-37, 640; *U.S. v. Navarro*, 145 F.3d 580, 586 (3rd Cir. 1998).

Analysis of legislative intent begins by outlining the historical context of the crime.  *Schad*, 501 U.S. at 640.  *Richardson v. U.S.*, 578 U.S. at 818-21, 119 S.Ct. at 1710-11 Separating "means" from "elements" depends on both the language of the statute and legal tradition.  See *Richardson v. U.S.*, 528 U.S. at 818-821, 119 S.Ct. at 1710-1711; *Schad*, 501 U.S. at 640-41. "Where a State's particular way of defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to demonstrate that the State has shifted the burden of proof as

1:03 CV 0953                                                        19

to what is an inherent element of the offense, or has defined as a single crime multiple offenses that
are inherently separate. Conversely, a freakish definition of the elements of a crime that finds no
analogue in history or in the criminal law of other jurisdictions will lighten the defendant's burden."
*Schad*, 501 U.S. at 640.


       The crime of robbery as constituted at the time of Gates' conviction was not the traditional
configuration. The statute as originally derived from the common law only prohibited a theft offense
involving the use or threat of immediate use of force against another. Thus, at one time robbery was
not considered to be a lesser included offense of aggravated robbery. *State v. Merriweather*, 64
Ohio St.2d 57, 58-59, 18 O.O.3d 259 (1980). Subsequently, the legislature aligned the crime of
robbery with that of aggravated robbery by tacking on a deadly weapon element and a physical harm
element (which are the "elements" now in issue) (See Ohio Rev. Code §2911.02(A)(1) and (2)), in
addition to retaining the original element of threat of immediate use of force against another. (See
Ohio Rev. Code §2911.02(A)(3)). While this may not be a "freakish" combination, it is nonetheless
not in the traditional formulation for the state. It cannot be said that the robbery statute "embodies the
same concepts as those in past versions." Compare *State v. Avery*, 126 Ohio App.3d 36, 48, 709
N.E.2d 875 (1998); followed in *State v. Skatzes*, 104 Ohio St.3d 195, 206, 919 N.E.2d 215 (2004)
(definition of kidnapping had long-standing origins).

1:03 CV 0953                                  20

A third consideration was referred to in *Schad* as "risks of different punishment" or "moral disparity." *Id.*, 501 U.S. at 643-44 and n. 9.  "[D]ifference[s] in their perceived degree of culpability would be reason to conclude that they identified different offenses." *Schad* at 643.  The undersigned notes that under Ohio Rev. Code §2911.02(B) the first two subdivisions of this offense are deemed to be felonies of the second degree, whereas the third (original) definition is deemed to be a felony of the third degree.  Thus they are not interchangeable moral equivalents of the same degree of culpability.

Gates disagrees with respondent's position that even if there is duplicity in the charge, the error was harmless since there was sufficient evidence to support the robbery conviction under both theories.  Gates contends that sufficiency of the evidence under either theory to support the robbery conviction is inadequate to overcome prejudice from the duplicitous jury charge.  However, in *Richardson v. U.S.*, the Court explicitly stated harmless error could apply.  See *id.*, 526 U.S. at 824. Sufficiency of the evidence under both theories presented to the jury in the disjunctive demonstrates harmless error in the same sense that when the jury charge is given in the conjunctive, sufficiency of the evidence as to any one of these acts sustains the verdict.  See *Turner v. U.S.*, 396 U.S. 398, 420, 909 S.Ct. 642, 24 L.Ed.2d 610 (1970). The evidence concerning the "smash and grab" was simple and direct and was sufficient to establish both deadly weapon and physical harm elements.

1:03 CV 0953                                    21

Further, harmless error applies since this matter is before this court upon collateral review and does not involve structural or fundamental error.  The harmless error rule is that when the federal judge in a habeas proceeding has grave doubt about whether trial error in a federal constitutional claim has a substantial and injurious effect or influence on a jury's verdict, that error is not harmless.  *O'Neal v. McAnich*, 513 U.S. 432, 438-39, 115 S.Ct. 992, 995-96, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Kotteakos v. U.S.*, 228 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (cited by *Brecht* and *O'Neal).*  "While the burden of persuasion on harmless error review falls on a petitioner, he need not prove that the error was outcome-determinative; instead he must merely remove any assurances that the error did not affect the outcome."  *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005); *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004); and see *Brecht*, 507 U.S. at 637.   Respondent's argument concerning the sufficiency of the evidence under both theories prevails.  Consequently, Gates is not entitled to a grant of the writ.


## CONCLUSION AND RECOMMENDATION

Following review of the petition and applicable law, the undersigned finds first, that petitioner has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court

1:03 CV 0953                               22

proceeding with respect to grounds one and two.  See 28 U.S.C. §2254(d)(1) and (2). Second, with respect to ground three, the undersigned finds that duplicity in the jury charge produced no more than harmless error. There has been no demonstrated need for an evidentiary hearing.  It is recommended that the petitioner's application for habeas corpus be denied.

                                        s/James S. Gallas
                                    United States Magistrate Judge


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)


Dated: May 27, 2005